AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Apple iPhone Model: A1687 (Rose/Gray) ) Case No.
FCC ID: BCG-E2944A, IC: 579C-E2944A )
Located at the DEA Evidence Room, 36 E 7th Street, Suite ) 1:18MJ-362
1900, Cincinnati, OH 45202 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___Ohio___ *(identify the person or describe property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___841(a)(1) & 846___, and the application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of ___30___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Philip V. Brown, Special Agent, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/8/18

_____
Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

## ATTACHMENT A

The property to be searched is:

Apple iPhone Model: A1687 (Rose/Gray)
FCC ID: BCG-E2944A
IC: 579C-E2944A

**hereinafter the "Device."**

The Device is currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, OH 45202.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 and involve **David KEMP** and other yet unknown individuals including:

    a. Evidence that shows the Device was used to further facilitate the distribution of illegal narcotics;

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording schedules or travel.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE DESCRIBED AS:<br><br>Apple iPhone Model: A1687 (Rose/Gray)<br>FCC ID: BCG-E2944A<br>IC: 579C-E2944A<br><br>**Located at the** DEA Evidence Room<br>36 E. 7th Street, Suite 1900<br>Cincinnati, Ohio | CASE NO.<br><br>1:18MJ-362<br><br>**UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Philip V. Brown, a Special Agent with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), have been so employed since August, 2010. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18, of the United States Code. I am currently assigned to the Cincinnati

Resident Office of the DEA. I have received specialized training from the DEA, including the 19-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have also received additional formal training from DEA to include the Basic Telecommunications Exploitation Program and the Internet Telecommunications Exploitation Program, which were specifically designed to assist agents in identifying and subsequently exploiting telephonic and internet related devices utilized in the commission of a Controlled Substance Act (CSA) violation.

3. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Your affiant has also participated in the execution of federal search warrants and federal arrest warrants in relation to these investigations. Additionally, your affiant has participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. Your affiant has also been involved with the monitoring of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with their methods of concealing the whereabouts of their illegal drugs, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods they use to prevent others unfamiliar with their criminal conduct

from observing things indicative of drug trafficking. Your affiant is also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

4. During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in illicit drug trafficking investigations, violent crimes investigations, and gangs and criminal enterprise investigations, ranging from street level dealers to major drug suppliers. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction; have involved: the use of confidential informants; the analysis of pen registers, trap and trace, and toll records; physical surveillances; electronic surveillances to include the use of poll cameras and vehicle cameras; and the execution of search warrants.

5. Through my training and experience I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hard-line telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

3

to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is an Apple iPhone Model: A1687 (Rose/Gray), FCC ID: BCG-E2944A, IC: 579C-E2944A, hereinafter the "Device." The Device is currently located at the **DEA Evidence Room, 36 E 7th Street, Suite 1900, Cincinnati, OH 45202**.

8. The subject telephone was located during a traffic stop of David "Powder" KEMP that occurred in Cincinnati, Ohio, referred hereinafter to as "**Subject Telephone**". The above item is currently in the custody of DEA Cincinnati.

9. On March 26, 2018, United States Magistrate Judge Stephanie K. Bowman signed Search Warrant 1:18MJ-201 authorizing the search of the **Subject Telephone** as well as two additional phones seized from David KEMP. The search warrant was executed on March 26, 2018 and the contents of the other two mobile phones were successfully extracted. However, due to the security of **Subject Telephone**, agents were unable to search the phone. The requested warrant would authorize agents to send the phone to the DEA Office of Investigative Technology in an attempt to more thoroughly bypass the phone's security system and search the device.

10. The applied-for warrant would authorize the forensic examination of the **Subject Telephone** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11. a conspiracy involving the suspected distribution of controlled substances, more specifically, heroin, fentanyl and cocaine, Schedule I and Schedule II controlled substances, in violation of, inter alia, 21 U.S.C. §§ 841(a)(1) and 846

4

12. In August 2017, I spoke with a source of information, hereafter referred to as SOI #1, who provided information about the drug-trafficking activities of David "Powder" KEMP and Quinton "Q" JOHNSON. The SOI has been convicted of a felony drug violation and a robbery in the past and had provided information to law enforcement officers in exchange for leniency and/or dismissal of a pending drug violation. I have been able to independently corroborate various details provided by the SOI through surveillance, records searches and information found on the internet, and therefore believe that the information is reliable. According to the SOI, Quinton JOHNSON works in and owns a construction business. JOHNSON also sells fentanyl to customers throughout the day. The SOI said that JOHNSON gets fentanyl from David KEMP, known to the SOI as "Powder." The SOI was provided with a photograph of KEMP and confirmed that KEMP was known to the SOI as "Powder." The SOI said that s/he observed JOHNSON meet with and obtain multiple small plastic bags of fentanyl from KEMP. JOHNSON told the SOI that one of the bags needed mannitol powder added because of the purity and strength of the fentanyl. The SOI further stated that the SOI was with JOHNSON when JOHNSON received multiple bags of fentanyl powder from "Powder." The SOI recalled JOHNSON discussing how each bag differed with regards to the purity level and that some of the bags needed a cutting agent added in order to decrease the strength.

13. I reviewed KEMP's criminal history and learned that KEMP had previously been arrested by the Drug Enforcement Administration in 2009. On February 10, 2009, agents and law enforcement officers from the DEA Cincinnati Resident Office arrested David KEMP following a reverse undercover operation. Pursuant to the arrest, KEMP fled on foot, but was apprehended shortly thereafter. KEMP's associate, Geneo BRONSON agreed to pay $55,000 for the purchase of five kilograms of cocaine with the understanding that additional money would be paid once the

5

cocaine was distributed. Once the transaction occurred, law enforcement officers attempted to conduct a traffic stop on the vehicle that contained KEMP. The driver, Quinell HADDEN, attempted to flee and actually struck an unmarked police vehicle in the process, injuring the officer. Once the vehicle came to a stop, KEMP and another co-conspirator fled on foot. KEMP was apprehended shortly afterwards and transported to the DEA Cincinnati Resident Office for processing. During the post-arrest interview, KEMP stated that he was not aware that there was going to be a drug transaction until after he had gotten into the vehicle and observed the transaction. KEMP also stated that he fled on foot because he was afraid. Ultimately, KEMP plead guilty to the charges and was sentenced to serve 78 months confinement. KEMP was also arrested and convicted for controlled substance violations that occurred in 1999 and 2002.

14. On Wednesday, March 21, 2018, law enforcement officers with the Cincinnati Police Department were conducting surveillance in a section of Cincinnati, Ohio that had been deemed a high frequented drug trafficking area. During surveillance, officers observed KEMP conducting counter-surveillance. For example, as soon as one of the undercover surveillance units parked down the street, KEMP drove his vehicle next to the undercover vehicle and peered inside in an apparent attempt to identify any law enforcement surveillance officers. KEMP was observed driving back to his original location and then briefly meeting with multiple different people that approached him. Then, officers observed a gray Infiniti vehicle pull up next to KEMP who was parked along the street. After a brief meeting, the Infiniti drove away and parked in a nearby parking spot. KEMP also drove away and parked next to the Infiniti. Officers observed the driver of the Infiniti meeting with KEMP and, after approximately three minutes, KEMP and the other unidentified driver of the Infiniti, got into their respective vehicles and departed the area. Although officers were unable to observe drugs or money being exchanged between KEMP and the various

6

people that met briefly met with KEMP, I believe that KEMP was engaged in exchanging drugs and/or money based on the short visits by multiple individuals.

15. As KEMP drove away, officers conducted a traffic stop of KEMP because KEMP had a suspended license. During the stop, officers smelled marijuana and asked KEMP to get out of the vehicle. KEMP later admitted to officers that he was just hanging out and smoking marijuana with his friends. A pat-down search of KEMP revealed that KEMP had approximately $3,000 in U.S. Currency in his pants pocket. Officers also located approximately $10,000 in U.S. Currency that was wrapped in black rubber bands, a pack of rubber bands and three mobile phones, including the **Subject Telephone**. Based on my training and experience, I know that drug traffickers will often wrap and sort their drug proceeds with rubber bands consistent with the U.S. Currency found in KEMP's vehicle. KEMP informed officers that **Subject Telephone 1** and another phone were his but stated that a third phone was not his. Other passengers in the vehicle were asked about the third phone and no one claimed ownership of it. KEMP initially stated that all of the U.S. Currency found in the vehicle and on KEMP's person was his and added that he had taken it out of a bank. When further questioned about those details, KEMP said that he had actually taken the money from his residence. KEMP again changed his story by claiming that some of the money belonged to his brother. When asked what KEMP's brother's name was, KEMP said "Mike" but was not willing to provide an identifiable last name to officers. Based on the inconsistencies of KEMP's statements, the observations made by surveillance and the manner in which the money was packaged, the U.S. Currency and mobile phones were seized.

16. On March 26, 2018, United States Magistrate Judge Stephanie K. Bowman signed a search warrant authorizing a search of the **Subject Telephone** and two additional phones. Due to the security measures on the **Subject Telephone**, agents were unable to conduct a search of **Subject**

7

Telephone. However, pursuant to a search of the other two phones, I observed electronic communications consistent with a drug-trafficking conspiracy. For example, I saw a text message that stated: "On way to you. Need 2" and "Bra I want that last one before it's over." Which lead me to believe that the text messages were coordinating the distribution of controlled substances.

17. Based on KEMP's history of trafficking controlled substances, surveillance observations of KEMP indicative of trafficking controlled substances and the evidence obtained pursuant to the traffic stop that includes KEMP's statements and the U.S. Currency, I believe that KEMP is involved in the distribution of controlled substances. Based on my knowledge that drug traffickers often utilize multiple mobile phones in furtherance of their drug trafficking activities and evidence collected on KEMP in this investigation, I believe that KEMP has used **Subject Telephone** in furtherance of a drug-trafficking conspiracy and that probable cause exists to search the **Subject Telephone.**

18. The Device is currently in the lawful possession of the DEA Evidence Room, 36 E 7th Street, Suite 1900, Cincinnati, OH 45202. It came into DEA possession following the arrest of David KEMP.

19. The Device is currently in storage at DEA Evidence Room, 36 E 7th Street, Suite 1900, Cincinnati, OH 45202. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

8

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

9

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my training, experience, and research, I know that these type of Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

11

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Nature of* examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of these Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of* execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR DELAY OF NOTIFICATION

26. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an

opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

## REQUEST FOR SEALING

27. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Philip V. Brown
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 8 day of June, 2018

Karen L. Litkovitz
United States Magistrate Judge

13

## ATTACHMENT A

The property to be searched is:

Apple iPhone Model: A1687 (Rose/Gray)
FCC ID: BCG-E2944A
IC: 579C-E2944A

**hereinafter the "Device."**

The Device is currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, OH 45202.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 and involve **David KEMP** and other yet unknown individuals including:

    a. Evidence that shows the Device was used to further facilitate the distribution of illegal narcotics;

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording schedules or travel.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.